**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTONIO ARROYO,** | : | **CIVIL ACTION** |
|     Plaintiff, | : | |
| | : | **No.:** |
| **v.** | : | |
| | : | |
| **RESOURCES FOR HUMAN** | : | |
| **DEVELOPMENT, INC.,** | : | |
|     Defendant. | : | **JURY TRIAL DEMANDED** |

**COMPLAINT**

**I. PRELIMINARY STATEMENT**

This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, Antonio Arroyo (hereinafter "Plaintiff"). Plaintiff was an employee of Resources for Human Development, Inc. (hereinafter "RHD") in Bethlehem, Pennsylvania, who has been harmed by race- and/or disability-based discrimination and retaliatory practices, as well as other improper conduct by RHD.

This action is brought under Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*

**II. JURISDICTION AND VENUE**

1. The jurisdiction and venue of this Court is invoked in this District pursuant to 28 U.S.C. § 1331 as arising under the laws of the United States, and in particular Title VII of the Civil Rights Act of 1964 and 1991 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*

2. Venue is proper in the Eastern District of Pennsylvania as some or all of the events complained of herein occurred in Northampton County, Pennsylvania.

3. All conditions precedent to the institution of this suit have been fulfilled.

4. Plaintiff has invoked the procedure set forth in Title VII and the ADA. On or about June 12, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was jointly filed with the Pennsylvania Human Relations Commission ("PHRC"), against RHD alleging, inter alia, race and disability-based employment discrimination and retaliation. On August 3, 2017, a Notice of Right to Sue was issued by the EEOC.

5. This action has been filed within ninety (90) days of receipt of said Notice.

### III. PARTIES

6. Plaintiff is a 50-year-old Hispanic male citizen and resident of the Commonwealth of Pennsylvania. Plaintiff at all times relevant herein was employed by RHD.

7. At all times relevant herein, Plaintiff was a "person" and "employee" as defined by Title VII, 42 U.S.C. § 2000e, and is subject to the provisions of said Act.

8. RHD is a Pennsylvania non-profit corporation with a place of business at 3893 Adler Place, Suite 100, Building B, Bethlehem, PA 18017.

9. At all times relevant herein, RHD was an "employer" and "person" as defined by Title VII, 42 U.S.C. § 2000e, and is subject to the provisions of said Act.

10. At all times relevant herein, Plaintiff was an "employee" as defined by the ADA, 42 U.S.C. § 12111(4), and is subject to the provisions of this Act.

11. At all times relevant herein, Plaintiff was a "person" as defined the ADA, 42 U.S.C. §

12111(7), and is subject to the provisions of said Act.

12. At all times relevant herein, Plaintiff was "disabled" as defined by the ADA, 42 U.S.C. § 12102(1), and is subject to the provisions of said Act.

13. At all times relevant herein, Plaintiff was a "qualified individual" as defined by the ADA, 42 U.S.C. § 12111(8), and is subject to the provisions of said Act.

14. At all times relevant herein, RHD was an "employer" as defined by the ADA, 42 U.S.C. § 12111(5), and is subject to the provisions of said Act.

15. At all times relevant herein, RHD was a "person" as defined by the ADA, 42 U.S.C. § 12111(7), and is subject to the provisions of said Act.

16. At all times relevant hereto, RHD acted by and/or failed to act by and through the conduct of their officers, managers, agents, and employees, all acting within the scope and course of their employment.

17. At all times material hereto, RHD employed more than fifteen employees.

18. RHD has, acting through its agents, servants and representatives, on more than one occasion, met with Plaintiff, and has heard allegations from Plaintiff of race and/or disability-based harassment, and disability-based discrimination, and retaliation.

19. At all relevant times herein, RHD knew, or had reason to know, of the actions and inaction alleged herein and/or has personally participated in some of said actions and is ultimately responsible for same.

20. At all times relevant hereto, RHD acted by and/or failed to act by and through the conduct of its officers, managers, agents, and employees, all acting within the scope and course of their employment.

IV. **CAUSES OF ACTION**

21. Plaintiff is a 50-year-old Hispanic male employee hired by RHD in February 2011 as a Resident Support Staff member.

22. Plaintiff also served as the Employee Resource Liaison Chairperson.

23. During Plaintiff's employment with RHD, Plaintiff was qualified for his position and performed his job duties in a proper and competent manner.

24. At all times relevant hereto, Plaintiff's supervisor was Craig Brophy (Director, Mainstay United), a Caucasian male.

25. In 2014, Plaintiff was diagnosed with a serious medical condition and disability, the identity of which is omitted from this Complaint because of privacy concerns with medical diagnoses, but which was expressly made known to RHD by Plaintiff.

26. Plaintiff's serious medical condition is a disability as that term is defined by the ADA, as amended by the ADAAA, because it substantially limited him in one or more major life activities, including walking, lifting, standing, engaging in prolonged physical activity, and responding to sudden physical or mental stressors.

27. RHD had notice of Plaintiff's disability because said disability required Plaintiff to undergo a surgical procedure in January 2014, which required leave.

28. RHD purported to grant Plaintiff's request for accommodation, and in April 2014, and Plaintiff resumed his position without issue.

29. In approximately July 2016, RHD underwent a restructuring of its management.

30. As a result, Brophy became Plaintiff's direct supervisor.

31. When Brophy took over, a large number of non-Caucasian employees were either

terminated or forced to resign by being transferred to positions they did not want or could not perform.

32. Plaintiff, as Employee Resource Liaison Chairperson, assisted these largely non-Caucasian employees by advising them regarding RHD's Corporate Personnel Policy Manual and holding management responsible for its actions.

33. Brophy then began to harass Plaintiff and subject him to harassment and discrimination based upon Plaintiff's race and disability, and in retaliation for Plaintiff's expressed opposition to Brophy's and RHD's racially retaliatory practices.

34. In December 2016-January 2017, Brophy revoked the accommodations that had been in place since 2014, despite the fact that Plaintiff had been performing his position with no issues.

35. Specifically, Plaintiff was taken away from the non-aggressive clients with whom he had been working, and moved to homes with more aggressive clients.

36. RHD then began bringing in new clients without assessments, so that Plaintiff did not know with what type of client he would be working.

37. This change in duties placed Plaintiff at an enhanced risk of being required to engage in prolonged physical activity and to respond to sudden physical and mental stressors.

38. RHD still required services to be performed for screened, non-aggressive clients, but those duties were reassigned to other, non-disabled employees.

39. Plaintiff notified RHD's human resources department in or around January 2017 that these changes were putting him in danger.

40. In good faith, Plaintiff provided RHD with medical documentation from his treating

provider, and attended meetings as requested, but RHD ultimately placed Plaintiff on leave while Brophy and other members of RHD's management team "looked into" Plaintiff's request for ADA accommodations.

41. RHD specifically advised Plaintiff that his work performance was not in question.

42. There was no business or other *bona fide* justification for placing Plaintiff on leave when he could have remained working in his job with the accommodations that he had before Brophy became his supervisor.

43. In January 2017, Plaintiff specifically complained to RHD via e-mail that being placed on administrative leave was in retaliation for his request for accommodations, that this was affecting his health, and that he felt he was under attack by the new management team as a result of his request for accommodations.

44. On February 20, 2017, Plaintiff sent an e-mail to RHD again complaining that he believed he was being denied his ADA rights; that he had asked RHD to engage in the interactive process to find reasonable accommodation, which included shift and duty changes, modifications, and adjustments; and that he had, in good faith, provided RHD with all the necessary medical records establishing that he was well qualified for all essential job functions, but needed minimal accommodation to minimize or avoid strenuous physical conflict.

45. Plaintiff also advised RHD in the February 20, 2017 e-mail that he would be filing a Charge with the EEOC.

46. After a meeting on February 21, 2017, RHD terminated Plaintiff's employment for pretextual reasons.

47. Plaintiff was literally terminated during the interactive process in that he had just left an interactive process meeting in which he engaged in protected conduct.

48. The stated reason was pretextual because it involved non-work related conduct, which a reasonable investigation would have revealed to be a mistake or error, warranting minor discipline.

49. Instead, as a result of RHD's hostility to the interactive process and Plaintiff's having engaged in protected conduct and having expressed opposition to RHD's racially retaliatory practices, RHD terminated Plaintiff's employment.

50. RHD's termination was pretextual in order to conceal its race or disability-based animus for discrimination and to retaliate against Plaintiff for objecting to and reporting race or disability-based discrimination and retaliatory practices.

51. RHD terminated Plaintiff due to his disabilities, regarding and/or perceiving him as disabled, or for stereotyping Plaintiff due to his race, retaliating against Plaintiff for engaging in protected conduct, and expressing opposition to racially retaliatory practices.

52. Plaintiff's job duties were, in whole or in part, taken over or absorbed by a younger employee who did not suffer from disabilities.

53. Plaintiff's disability was a determinative factor in RHD's decision to terminate his employment.

54. Plaintiff's race was a motivating factor in RHD's decision to terminate his employment.

55. Plaintiff's expressed opposition to RHD's racially retaliatory practices was a motivating factor in RHD's decision to terminate his employment.

56. Plaintiff believes and therefore avers that the termination of his employment was a violation of the ADA due to the aforementioned conduct.

57. RHD was responsible and liable for the conduct of its principals, employees, and agents for subjecting Plaintiff to a discriminatory employment and work environment, and for failing to protect Plaintiff from unlawful conduct.

58. As a direct result of the hostile and antagonistic conduct by RHD's supervisory employees, Plaintiff was deprived of his employment with RHD.

59. As a direct result of RHD's conduct, Plaintiff has suffered and continues to suffer severe emotional, psychological, and physical distress.

60. As a direct result of RHD's conduct, Plaintiff's career, professional, and job opportunities have been impaired and damaged, and he has suffered a loss of earnings and earning capacity.

61. As a direct result of RHD's conduct, Plaintiff has been irrevocably damaged.

62. As a direct result of RHD's above-stated conduct, Plaintiff has suffered ongoing back-pay and front-pay losses.

### COUNT I
### PLAINTIFF v. RHD
### VIOLATION OF TITLE VII

63. Paragraphs 1 through 62, inclusive, are incorporated by reference as if fully set forth at length herein.

64. Based on the foregoing, RHD has engaged in unlawful practices in violation of Title VII. The said unlawful practices for which RHD is liable to Plaintiff include, but are not limited to, fostering and perpetuating a hostile and offensive work environment,

retaliating against him because of his expressed opposition to offensive race-related conduct in the work place, subjecting him to more onerous working conditions, and treating him in a disparate manner.

65. As a direct result of the aforesaid unlawful discriminatory employment practices engaged in by RHD in violation of Title VII, Plaintiff sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, plus back pay, front pay and interest due thereon.

## COUNT II
## PLAINTIFF v. RHD
## RETALIATION UNDER TITLE VII

66. Paragraphs 1 through 65, inclusive, are incorporated by reference as if fully set forth at length herein.

67. By the acts complained of, RHD has retaliated against Plaintiff for exercising his rights under Title VII, which constitutes a violation of Title VII.

68. RHD's foregoing continued adverse employment actions and violations, including retaliation against Plaintiff under circumstances giving rise to an inference of discrimination and retaliation, were taken without valid and just cause.

69. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of RHD's retaliatory practices unless and until this Court grants relief.

## COUNT III
## PLAINTIFF v. RHD
## VIOLATION OF THE ADA

70. Paragraphs 1 through 69 inclusive, are incorporated by reference as if fully set forth at

length herein.

71. At all times relevant herein, Plaintiff was disabled, regarded as and/or perceived as disabled by RHD.

72. Plaintiff was able to perform all of the essential functions of his position with or without accommodation.

73. By reason of the conduct set forth above, RHD intentionally, knowingly, and purposefully violated the ADA by invidiously discriminating against the qualified Plaintiff who had a disability.

74. By its actions and inactions through its agents, servants, and representatives, RHD created, maintained, and permitted to be maintained a work environment, which was hostile to persons such as Plaintiff who have a record of or are perceived as having a disability.

75. As a direct result of Plaintiff's disability and/or request for accommodation, RHD terminated Plaintiff's employment.

76. RHD's aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton, and in reckless disregard of Plaintiff's rights.

### COUNT IV
### PLAINTIFF v. RHD
### RETALIATION UNDER THE ADA

77. Paragraphs 1 through 76 inclusive, are incorporated by reference as if fully set forth at length herein.

78. By the acts complained of, RHD has retaliated against Plaintiff for exercising his rights under the ADA, namely requesting and/or using leave or a reasonable accommodation,

in violation of the ADA.

79. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of RHD's retaliatory practices unless and until this Court grants relief.

## STATEMENT OF FACTS JUSTIFYING
## THE IMPOSITION OF PUNITIVE DAMAGES

80. Paragraphs 1 through 79 inclusive, are incorporated by reference as if fully set forth at length herein.

81. At all times relevant hereto, RHD knew or should have known of the pattern of conduct in which its agents, servants, and representatives had engaged and in which they continued to engage.

82. At all times relevant hereto, RHD knew or should have known that the aforesaid pattern of conduct was in violation of law and RHD's stated policies and terms of employment.

83. Despite such knowledge, RHD failed to adequately investigate, discipline, or discharge its agents, servants, and representatives who discriminated against Plaintiff by reason of his race, disability, or expressed opposition to racially retaliatory practices.

84. RHD failed and refused to properly protect and support Plaintiff and in fact subjected or permitted him to be subjected to disability- or race-based discrimination and retaliation.

85. At all times relevant hereto, RHD acted willfully, wantonly, recklessly, maliciously, and with an outrageous disregard and indifference to the rights, safety, and well-being of Plaintiff and other employees similarly situated; by deciding to terminate Plaintiff for a pretextual reason that a reasonable investigation would have revealed to be a

mistake and error warranting minor discipline after Plaintiff engaged in protected conducted and expressed opposition to RHD's racially retaliatory practices, RHD exhibited both willfulness and reckless disregard of Plaintiff's rights in the workplace.

## V. **PRAYER FOR RELIEF**

86. Paragraphs 1 through 85 inclusive, are incorporated by reference as if fully set forth at length herein.

WHEREFORE, Plaintiff requests this Court to enter judgment in his favor and against RHD and requests that this Court:

(a) Exercise jurisdiction over his claims;

(b) Award traditional tort remedies such as compensatory damages, pain and suffering, physical and emotional distress, economic loss, time loss, and severe emotional trauma under Title VII;

(c) Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

(d) Order RHD compensate Plaintiff with a rate of pay and other benefits and emoluments to employment to which he would have been entitled had he not been subject to unlawful discrimination and/or retaliation;

(e) Order RHD compensate Plaintiff with an award of front pay, if appropriate;

(f) Order RHD compensate Plaintiff for the wages and other benefits and emoluments of employment lost, because of their unlawful conducts;

(g) Order RHD pay to Plaintiff compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other

      non-pecuniary losses as allowable under Title VII;

(h)  Order RHD pay to Plaintiff such punitive damages as may be allowable under Title VII or the ADA.

(i)  Order RHD pay to Plaintiff pre- and post-judgment interest, costs of suit and attorney and expert witness fees as allowed by law; and

(j)  The Court award such other relief as is deemed just and proper.

## VI.  JURY DEMAND

Plaintiff demands trial by jury.

                              HAHALIS & KOUNOUPIS, P.C.

                              By:   /s/ George S. Kounoupis
                                  GEORGE S. KOUNOUPIS, ESQUIRE
                                  20 East Broad Street
                                  Bethlehem, PA  18018
                                  (610) 865-2608
                                  Attorneys for Plaintiff

Dated:  November 1, 2017